Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

### for the

### western District of Arizona

### Phoenix Division

|  |  |
|---|---|
| FAIDA Y. ZAKARA | Case No.   CV-21-1146-PHX-SRB |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)*   ☒ Yes   ☐ No |
| **-v-** | |
| FLACK GLOBAL METALS, ET.AL | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

I.     **The Parties to This Complaint**

A.     **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | FAIDA Y. ZAKARIA |
| Street Address | 3400 E. SOUTHERN AVE  APT |
| City and County | PHOENIX, |
| State and Zip Code | ARIZONA, 85040 |
| Telephone Number | 254-258-2570 |
| E-mail Address | Faida.Zakaria9@gmail.com |

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | FLACK GLOBAL METAL |
| Job or Title *(if known)* | COMPANY OR AN ENTITY |
| Street Address | 16435 N. SCOTTSDALE ROAD #200 |
| City and County | PHOENIX |
| State and Zip Code | ARIZONA, 85254 |
| Telephone Number | 8108133184 ext 8008 - Cell 3126908008 |
| E-mail Address *(if known)* | Rkirk@flackglobalmetals.com |

Defendant No. 2

| | |
|---|---|
| Name | SHYLA MURANKO |
| Job or Title *(if known)* | DIRECTOR OF LOGISTIC. FLACK GLOBAL MENTAL |
| Street Address | 16435 NORT SCOTTSDALE ROAD #200 |
| City and County | PHOENIX |
| State and Zip Code | ARIZONA 85254 |
| Telephone Number | 4402891091 ext 3600 - Cell 2166583600 |
| E-mail Address *(if known)* | Smuranko@flackglobalmetals.com |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

E-mail Address *(if known)* _____

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☒ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 USC SECTION 20000

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

    a.   If the plaintiff is an individual

    The plaintiff, *(name)*  N/A _____ , is a citizen of the State of *(name)*  N/A _____ .

    b.   If the plaintiff is a corporation

    The plaintiff, *(name)*  N/A _____ , is incorporated under the laws of the State of *(name)*    N/A _____ ,

    and has its principal place of business in the State of *(name)*

    N/A _____ .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

    a.   If the defendant is an individual

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* _____ , is a citizen of
the State of *(name)* _____ . Or is a citizen of
*(foreign nation)* _____ .

b.   If the defendant is a corporation
The defendant, *(name)* _____ , is incorporated under
the laws of the State of *(name)* _____ , and has its
principal place of business in the State of *(name)* _____ .
Or is incorporated under the laws of *(foreign nation)* _____ ,
and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the
same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy−the amount the plaintiff claims the defendant owes or the amount at
stake−is more than $75,000, not counting interest and costs of court, because *(explain)*:

$250,000. ON EACH CAUSES OF ACTION AGAINST EACH DEFENDANT

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the
facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was
involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including
the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and
write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

SEE ATTACHED COPY OF THE COMPLAINT

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal
arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include
the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any
punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or
punitive money damages.

SEE ATTACHED PLAINTIFF'S COMPLAINT.

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          06/28/2021

Signature of Plaintiff
Printed Name of Plaintiff     FAIDA Y. ZAKARIA

### B.  For Attorneys

Date of signing:          06/28/2021

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA,

PHONIX DIVISION.

| | | |
|---|---|---|
| **FAIDA Y. ZAKARIA** | ) | **CASE NO.** |
| 3400 E. SOUTHERN AVENUE, APT.256 | ) | **JUDGE.** |
| PHOENIX, AZ 85040-3847 | ) | **MAGISTRATE** |
| PLAINTIFF. | ) | |
| VS. | ) | **COMPLAINT.** |
| **FLACK GLOBAL METALS** | ) | **JURY DEMAND ENDORSED.** |
| 16435 N. SCOTTSDALE ROAD #200 | ) | |
| SCOTTSDALE, AZ85254 | ) | |
| AND | ) | |
| **SHYLA MURANKO** (AGENT) | ) | |
| 16435 N. SCOTTSDALE ROAD #200 | ) | |
| SCOTTSDALE, AZ85254 | ) | |
| DEFENDANTS. | ) | |

## I.   COMPLAINT.

1. This is a Civil Right action seeking relief under Title V11 of the Civil Right Act of 1963, as amended to 42 USC Section 2000. Following a granting of the right to sue by EEOC #540-2021-00173. **(See attached Marked Exhibit "A").**

## II.   JURISDICTION.

2. This Honorable Court is vested with the authority under the law and Constitution of the United States to adjudicate the issues in controversy in this Case and shall hear and determine the merit of the subject matter.

1

A. EEOC Charge and the Granting of the Right to Sue under the State of Arizona and United States Jurisdictions.

B. This action is instituted under both the State and Federal Civil Rights law. **(See Exhibit "B").**

## III.   PARTIES.

3. Plaintiff Faida Y. Zakaria is an educated Black Female and a Naturalized United States Citizen born in Ghana in the Sub Sahara, Africa. Ms. Zakara is American Educated with a post Graduate Degree in International Relations & Diplomacy. Zakaria is also a daughter of a High ranking member of the United States Armed Forces.

4. First Defendant, **Flack Global Metals** pride itself as: "That Next Generation Service Center". First Defendant is and a business entity Licensed in the States of Arizona and other States of the United States , including, but not limited to the States of Ohio. The Company Operates under both the states and Federal law of the United States. Its services includes but not limited to design and fulfill supply chains of OEMs using Flat rolled Steel, aluminum and stainless. Flack Global Metal employ more than 15 employees in its work force and provides Services in several state of the United States, including but not limited to Phoenix, in the State of Arizona, Cleveland, in the Ohio States and other states. This party is been sued in its Official Capacity and is liable to the Plaintiff.

5. Second Defendant, **Shyla Muranko** is employed by the first Defendant as Manager and Supervisor of the Company's Logistic Department whose office is based in Phoenix, Arizona. Muranko is an Agent of the First Defendant and was at all material time was an immediate supervisor to the Plaintiff and in her capacity, Muranko supervises the work activities of the Plaintiff and directly or indirectly report to the First defendants about the Plaintiff work performance and condition of Plaintiff's employment. This party is being sued in her personal and official Capacity on each claims asserted by the plaintiff.

## IV.   STATEMENT OF FACTS AND THE CASE.

6. On August 25, 2020, Plaintiff forwarded to the United States Office Equal Employment Opportunity Commission, (EEOC), in Phoenix, Arizona Branch a formal Complaint alleging that plaintiff violated her civil right during plaintiff's employment with Flack Global Metal, (FGM). **(See attached Exhibit Marked "C").**

7. In a 35- paragraphs Complaint to EEOC, adopted hereto , Plaintiff provides detail Several factual basis in support of the allegations and states as follow:

2

8. That prior to accepting Employment with FGM, Plaintiff was employed by Echo Global Logistics Inc. in Dallas TX as a sales associate for more than two years. In March 2020, Plaintiff accepted employment with FGM in the position of a Supply Chain Coordinator, with hope of advancement in career to higher level and advanced responsibilities.

9. On or about March 09 2020, During the Covid-19 Pandemic, Plaintiff resumed her new employment position at FGM under the direct supervision of Second Defendant, Shyla Muranko, whose Office is in the Phoenix. Arizona branch As a Supply Chain Coordinator. **(See attached marked Exhibit "D").**

10. That on the first day of work, Plaintiff was assigned a Female trainer named Juanita Tyus. Ms. Tyus worked at the Company's Logistic department's main office in Cleveland, Ohio. Tyus is also under Shyla Muranko's Supervision.

11. That based upon information and belief, Ms. Tyus is the only person of Color employed by the FGM, with a workforce of more than 25 employees.

12. That Plaintiff became the Second person of color employed by FGM and are directly supervised by the Second Defendant in the logistics department. Tyus briefed Plaintiff about the logistics Department staffing and work force processes and procedures. She informed Plaintiff that the department was originally manned by a team of four employees, three employees recently fired, leaving Tyus as the only remaining employee performing the tasks of the entire department.

13. Plaintiff gathered that the in house policy and procedure of the Logistic Department is complicated and requires adequate training, adding that First Defendant does not provide a training program to help New Employee understand the complexity of this department. Ms. Tyus advised Plaintiff to ask question about anything that is confusing and to seek directive from immediate Supervisor, **Shyla Muranko** and Management about any confusion or lack of clarity.

A) Hostile work place for Person of Color & Denial of Training and Supports

14. That shortly, Muranko informed Plaintiff that Ms. Tyus no work for the Company. Muranko simply stated that Tyus was fired for poor job performance. Plaintiff remains in the Department as a single and only staff in the logistic department without a designated replacement or alternative trainer to assist Plaintiff.

3

15. After Tyus departure, Plaintiff repeatedly approached   Second Defendant, Muranko with request for training assistance and additional help to accommodate high volume of demand from Customers and Vendors. Muranko dismissed plaintiff's request for assistance with training and other.

16. Plaintiff efforts to secure inter-departmental assistance led Plaintiff to another newly hired female Caucasian employee, named Hillary Mosca who was experiencing identical problems in understanding the complexity of the in-house operations. Mosca revealed to plaintiff that she had experience same problem and through the company assistance through training and collective support from management and employees, Mosca fully overcome the challenges and complexity.

17. That Second Defendant overlooked  Plaintiff request for training assistance and thereafter used the frustration experienced by  Plaintiff due to lack of assistant against Plaintiff. Muranko began a spread negative and disparaging Campaign about plaintiff to management staffs and employees about false claim and began to make a mockery of me, during the company's conference meetings about some of my mistakes that were directly attributable to lack of training or inadequate documentation.

18. Plaintiff brought to the attention of the management at several conference meetings about the difficulty getting assistance from Muranko and her hostility toward plaintiff. Plaintiff asserted to the management about the lack of assistance and support from Muranko and other managers and how that such conduct was affecting Plaintiff morally, physically, mentally and emotionally in the work environment at FGM.

19. Plaintiff states that Muranko negative portrayal of Plaintiff at FGM was well known by all employees and management, some of which including but not limited to how Muranko openly denigrate and disparage Plaintiff during a questions and answer at conference meetings.

20. That at a point one sympathetic employee was forced to comfort Plaintiff with some word of encouragement and support adding that: "Those challenges are what every new employee goes through at the early stages of their employment in this company, but with proper training and management support, employees overcome these challenges and they do fantastic jobs". This employee indicated that he had more than five years' experience at the company.

21. That Shyla Muranko neither showed good faith efforts to assist Plaintiff to succeed on the job nor to improve plaintiff performance through training and guidance. Instead, Muranko worked to ensure that Plaintiff failed at every step along the way. She constantly humiliated me at conference meetings, before other managers, resulting in my physical, emotional and mental breakdown on several occasions, forcing me to obtain medical and professional help through counseling and medication.

22. Plaintiff avers that Muranko created a hostile work place by refusing to answer my numerous legitimate questions, making a mockery of Plaintiff to other managers claiming that Plaintiff asked too many questions, and a negatively portraying the question as unintelligent and questioning plaintiff's ability to articulate English Language in direct reference to Plaintiff's ethnicity as an African, whose Language of Instruction may not be English.

23. Plaintiff states that those questions were intended to prevent any potential errors based solely upon the fact that Plaintiff was forced to figure things out by Plaintiff without formal training and the absence of support from Management.

### B) Unlawful Threats of Employment termination:

24. On July 28, 2020, Muranko served Plaintiff a written document captioned: "improve Communication and trust with Customers and Vendors or get terminated." No other employees were served with this kind of threat, including Ms. Mosca, Ms. Roche, Mr. Brennan, and Mr. Provenzano. **(See attached marked Exhibit "E")**

25. Plaintiff informed Muranko that the issues asserted in the written Document were not part of Plaintiff problem. Plaintiff maintain that she possess solid communication and trustworthiness with all the vendors and customers that Plaintiff have sufficient evidence and feed back to prove it.

26. Plaintiff dismissed Muranko's claim as a product of Muranko's hatred and insensitivity to people of Color like Ms. Tyus's firing resulting in the filing of EEOC Charge No. 532 2020 01972 by Tyus and this Plaintiff with instant action.

27. Plaintiff assert that her previous record of employment with Echo Global Logistics as a sales representative for more than two years, rebuts Muranko false claim of Communication issues with Customers and vendors, the same false allegation Muranko used against MS Tyus. Who successfully worked for the Company for more than two years with a remarkable feed -back from vendors and Customers.

28. Plaintiff states that      Muranko in bad faith specifically concealed      Plaintiff's accomplishment working for FGM under the hostile condition stated in paragraphs 6 through 28 of this Complaint.( **See exhibit "C"** for the detail of Plaintiff accomplishment ),e.g. Plaintiff single handedly without any support saved the company hundreds and thousands of dollars in various transactions while operating under hostile conditions of employment  such as: performed a 3 loads pickup from Memphis TN going to Chicago Heights IL. Another employee had a $1600 rate per load deal; plaintiff was able to book the loads for $1150 per load. Plaintiff also saved on lanes like Laredo TX to East Brewton AL, Houston to Wedowee AL, and many other lanes. Plaintiff has numerous times been extended gratitude by customer service representatives for jobs well done by saving them money.

29. Plaintiff's progress during the short time with the Company included going extra miles by committing additional weekday hours and time on weekends when Plaintiff had to cover complicated workload situations over the weekend. One of which was a load booked for one Steven Swanney on July 10th, 2020. Plaintiff worked with the carrier throughout the pick-up of the load to the delivery of the load on July 11th. 2020

30. That no one in the management or staff at FGM was fair-minded to recognize and appreciate Plaintiff's progress on the job, because the person making achievements under difficult conditions happened to be a person of color. Communication and trust are essential qualities in successfully accomplishing the above-mentioned transactions. The management claim of poor performance leveled against plaintiff is a product of disparate treatment based on race.

### C) Threat of Unlawful Demotion from Supply Chain Coordinator to Administrative Assistant position.

31. That after unsuccessful attempts by Muranko to pressure Plaintiff to quit her position, Muranko and FGM reconvened to introduce a new threat that would force Plaintiff to accept a demotion in position and salary or face termination of employment. In the new threat, FGM based its claims on what it terms as "general level of unsatisfactory work performance and mistakes," i.e. A routine minor mistake that other employees make frequently without penalty, e.g. Ms. Hillary Mosca, Ms. Roche, Mr. Brennan, and Mr. Provenzano, made more consequential mistakes than writer, yet, the Company did not subject them to the same treatment, including, but not limited to threats of demotion in position and salary. Neither Mosca nor any other employees were subjected to this specific threat. (**See attached Marked Exhibit "F").**

32. Plaintiff rejected FGM's offer of demotion because the offer is a product of disparate treatment and retaliation for complaining about lack of assistance and training. FGM is attempting to use salaries, wages and compensation to economically benefit itself. That no other employees were treated with these kinds of offers, but the Plaintiff.

### D) Unlawful retaliation and harassment by way of Surveillance of Plaintiff's private email system and Invasion of Privacy

33. On or about July 31, 2020 and August 3, 2020, FGM with ill intent to cause harm by way of invading Plaintiff's privacy right, FGM through its agents began to spy on plaintiff private email account that is unconnected to the Company email. FGM instructed one of its IT employees in the name of **Mathew Gould** to place spy software on the Plaintiff's office Computer as well as private email accounts. On July 31, 2020, Mr. Gould spent more than 3 hours on Plaintiff's work computer and more than two hours on August 3, 2020. During this time, Mr. Gould and FGM had total control of the Plaintiff's computer as well as all information and personal data transfer. Plaintiff reported this practices or action by Mr. Gould to second Defendant Muranko, who essentially dismissed the report and did nothing. There were no other employees who were subjected to this electronic surveillance but only the writer. The extent of the damage caused by the Company's conduct is yet unknown to plaintiff.

### E) Deliberates fabrication of information about Breach of Company Confidentiality and Threat of Termination of Employment

34. That as FGM awaited the decision of the Plaintiff on the offer of demotion; FGM through its HR sent plaintiff an email that accused Plaintiff of breach of confidentiality to wit: "transferring to private email company-classified material". FGM wanted Plaintiff to delete the alleged confidential materials from Plaintiff's Private Inbox. FGM did not answer Plaintiff's request for name of the classified material found in her inbox that being sought for deletion. **(See attached Plaintiff Exhibit "G").**

35. First Defendant, FGM did not identify the name of the alleged file labeled as classified material that was sent to Plaintiff's private mail account. This claim, Plaintiff states is false because no such materials exist in the Plaintiff's Private Inbox.

36. Plaintiff states that no files belonging to the first Defendant was found on Plaintiff's private inbox that breached company policy as falsely alleged. That the call by the Defendant to delete a file that never exist is deliberate manipulation of falsehood design to harassed, intimidate and retaliate against the plaintiff.

### Unlawful Harassment & intimidation Against Plaintiff

37. Plaintiff states and adopts in the foregoing averments contain in paragraph 6 through 38 of this Complaint constitutes an unlawful retaliation, harassment and intimidation against

Plaintiff by MS. Shyla Muranko, and FGM, who orchestrated these act without regard to plaintiffs rights. That FGM knew of these violations but failed to take corrective action to protect Plaintiff against any injury.

38. Plaintiff states and restated that the action of first Defendant, Second Defendant and its Management staff in terminating writer's employment is unlawful and violates writer's Federal Civil Rights Under Title VII of the Civil Rights Act of 1964 and other Federal Civil Rights statute to wit: A) Retaliation for 1) Refusing to give in to the Company threats of Termination of Employment, 2) Declined Company Offer of downward reduction in position and salaries, 3) unlawful discrimination based on race, ethnicity, and other factors; and withholding of 15 % Covid-19 Pandemic Payment to all employees.

39. That the actions of the defendant as stated in paragraphs 6 through 40 is based in part and/as a whole on race where there exist a record or pattern of discriminatory practices against people of color by FGM and its Management staff.

40. That based upon Public Court Record, Plaintiff's personal knowledge and belief that MS. Shyla Muranko, and FGM, has been named as a Defendants to answer these kinds of law suits/charges, filed by former employees and others.

41. That in good faith, Plaintiff forwarded to Defendants a letter of intent to sue and request for resolution without any further action, but FGM rejected the Offer by failing to respond. See attached

42. That In an adverse consequent against Plaintiff for rejecting the Defendants' Offers, Defendants FGM penalize Plaintiff by withhold Plaintiff's 15% percent COVID 19 Pandemic payment agreed in an email message that because plaintiff rejected the company offer, Plaintiff is not entitles to the 15% payment that was allocated to all the employees before the proposed unlawful offer. **(See attached marked Plaintiff's exhibit "H").**

43. Plaintiff assert that the actions of the Defendants as stated in paragraph 6 through 42 of this Complaint under the Civil Right Act of 1964 as Amended by 42 U. S. C. §§2000e-2000

## V.   CAUSES OF ACTION & CLAIMS UPON WHICH RELIEF IS SOUGHT

44. **First Cause of Action**: Disparate treatment based on race and ethnic Background in violation of Plaintiff's Civil Rights to equal treatment of employee under the statute l0i0 mention in paragraph 44 of this Complaint.

45. **First Claim For Relief:** Disparate treatment of Plaintiff based on race and ethnicity. Plaintiff states and restates that the action of the defendant as stated in Paragraphs 6

through 45 Constitutes disparate treatment in violation Plaintiff's civil right as stated in para 44 of this Complaint. That Plaintiff suffered mental, physical and emotional injury as a proximate caused by Defendants who acted in a concerted actions to wit: 1) willfully and in bad fate denied Plaintiff equal training assistance and support on the job that is accorded to other employees Mosca (see para 17 of this Complaint); 2) treat plaintiff with contempt by refusing to answer questions concerning the Job activities; 3) spread false and negative messages about the plaintiff to other employees as a means mobilized other to join in making life miserable for Plaintiff.

46. **Second Cause of Action**: Retaliatory Treatment against Plaintiff for exercising a constitutionally guarantee right to make a beneficial decision about the condition of her employment.

47. **Second Claim For Relief:** Plaintiff states that the concerted action of the Defendants as states in Paragraphs 6 through 46 of this Complaint constitutes a deliberate and willful retaliation against plaintiff in violation of Plaintiff Civil Right Act of 1964 as amended to 42 USC sect 2000.Defendants concerted action to wit: 1) terminating Plaintiff's employment for declining Defendants' offer of demotion to Administrative Assistance Position, and 2) withholding of Plaintiff's 15 % **Corvid- 19** payment; 3) subjecting Plaintiff to hostile treatments, including  labeling false accusations about breach of Company Confidential Material and others. Plaintiff suffers and continues to suffer physical, mental and emotional injury caused by Defendants actions.

48. **Third  Cause of Action:** Created Hostile and Insensitive  Workplace for  person of Color and willful disregard to Complaints and rights of the Protected person of color.

49. **Third Claim for Relief:** That the actions of the Defendants as contain in Paragraphs 6 through 48 violated the prohibition against creating a hostile work place against people of Color under the Civil Right Act of 1964 as stated in the foregoing Complaint. Plaintiff suffer and continue to suffer Physical, Mental and emotional injury caused by this conduct. **See attached marked Plaintiff's exhibit "I").**

## VI.    RELIEF.

**Wherefore** Plaintiff prays for the following relief:

### A. Declaratory Judgment:

1) Grant in favor of the Plaintiff a Declaration that First defendant in its Official Capacity) and Second Defendants in her individual and Official Capacity are directly and/or in directly liable to the plaintiff's Injury as enumerated in the foregoing complaint.

2) Grant in favor of Plaintiff an order of Injunction prohibiting the Defendants from engaging in the Conduct states in paragraph 6 through 50 of this Complaint.

**B. <u>Damages and Compensation:</u>**

1) Enter Judgment in favor of the Plaintiff for monetary damages in the **Sum of Two Hundred and Fifty Thousand U.S Dollars, $250,000.00** on each causes of action against each defendant on each Cause of action.
2) Grant a punitive damages as this Honorable Court deemed fit to make.
3) Grant any relief appropriate.

Respectfully Submitted

**Faida Y. Zakaria**
3400 E. Southern Avenue
Phoenix, AZ 85040-3847

**Plaintiff Pro Se**

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:   **Faida Zakaria**<br>**3400 E. Southern Ave.**<br>**Phoenix, AZ 85040** | From:   **Phoenix District Office**<br>**3300 North Central Ave**<br>**Suite 690**<br>**Phoenix, AZ 85012** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **540-2021-00173** | **Patricia A. Miner,**<br>**Supervisory Investigator** | **(602) 661-0040** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (*briefly state*)

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

**Elizabeth Cadle,**
**District Director**

04/14/2021

*(Date Issued)*

cc:   **Director**
**Human Resources**
**FLACK GLOBAL METALS**
**16435 N Scottsdale Road, Suite 200**
**Scottsdale, AZ 85254**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2021-00173 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Faida Zakaria** | **(254) 258-2570** | **03-15-1992** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3400 E. Southern Ave., Phoenix, AZ 85040** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **FLACK GLOBAL METALS** | **15 - 100** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **16435 N Scottsdale Road, Suite 200, Scottsdale, AZ 85254** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **03-09-2020**  Latest **08-12-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about March 2020, I began my employment as a Logistic Coordinator by the Management of Flack Global Metal under the Supervision of Shyla Muranko and HRM, Renee Kirk. During this period, another employee Hillary Mosca (Caucasian) was also hired by the Company. I believe that she was treated better than me in that she was never given the ultimatum of improve communication and trust with Customers and Vendors or get terminated." No Caucasian employee was served with this kind of threat, including Ms. Mosca, who was also a new hire like me. I had solid communication and trust with all the vendors and customers that I had the opportunity to work with. I believe that I was discriminated against because of my race and ethnicity.

In less than six months on the Job, I suffered disparate treatment, retaliation, and subjected to a hostile work environment by Manager, Shyla Muranko. Ms. Muranko , whose disparate actions were overlooked by HRM, Renee Kirk, following a repeated complaint to the Management about the unlawful conducts by Muranko.

I was subjected to a pattern of severe mistreatment comprising of 1) disparate and unfair treatment based on race and ethnicity, 2) retaliation, 3) unwarranted harassment and humiliation, 4) intentional discrimination based on race, by reducing my position  5) unwarranted and vicious surveillance of my private life including but not limited to my private email and monitoring my private email account,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Mar 15, 2021** _____<br><br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2021-00173 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

6) unlawful employment practices of discharging minority employees or otherwise discriminating against them concerning their pay, compensation, terms, conditions, or privileges of employment, because of such individuals' race.

I was retaliated against by Respondent for 1) Refusing to succumb to the Company threats of termination of employment, 2) Declined Company Offer of downward reduction in position and salaries, 3) unlawful discrimination based on race, 4) Punishing me for the action of another employee of color, 5) Deliberately withholding my 15% percent COVID-19 Pandemic payment agreed upon by the company and all its staffs, 6) forcefully accusing me of tempering with the company confidential information, 7) Maliciously subjected me to humiliating and degrading treatment. And others.

I believe I was discriminated against because of my race, Black/African-American and national origin, Ghana, in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, I believe that I was retaliated against.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Mar 15, 2021** | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 661-0002
FAX (602) 640-5071
Website: www.eeoc.gov

Faida Zakaria
3400 E. Southern Ave.
Phoenix, AZ 85040

Subject:    Dismissal of Charge
            Charge Number:540-2021-00173C

Dear Ms. Zakaria:

The purpose of this letter is to inform you that the EEOC has concluded its investigation of the above-referenced charge of employment discrimination. After reviewing the information in the file including the information you submitted, the EEOC does not believe that additional investigation would result in our finding a violation.

The EEOC has terminated its investigation into your allegations. While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretation of the available evidence and the laws we enforce. This letter, and the enclosed documents, will dismiss your case and no further action will be taken by the EEOC.

Enclosed is your Dismissal and Notice of Right to Sue. The Dismissal and Notice will explain your right to pursue the matter in court. If you want to pursue your charge, you may do so on your own by filing in Federal District Court within *90-days from the date that delivery of the Notice was* <u>*attempted*</u> *at your last known address of record or 90 days of receipt of the Notice, whichever is earlier. If you do not file a lawsuit within the required 90-day period, your right to file a lawsuit in this matter will expire and cannot be restored by EEOC.*

If you have any questions, please feel free to contact me at (602) 661-0040.

Sincerely,

04/14/2021
_____

Date

*Patricia Miner*

Patricia Miner
Supervisory Investigator

Exh. (B)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2021-00173 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Faida Zakaria** | **(254) 258-2570** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **3400 E. Southern Ave., Phoenix, AZ 85040** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **FLACK GLOBAL METALS** | **15 - 100** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **16435 N Scottsdale Road, Suite 200, Scottsdale, AZ 85254** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **03-09-2020**   Latest **08-12-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about March 2020, I began my employment as a Logistic Coordinator by the Management of Flack Global Metal under the Supervision of Shyla Muranko and HRM, Renee Kirk. During this period, another employee Hillary Mosca (Caucasian) was also hired by the Company. I have reason to believe that she was treated better than me in that she was never given the ultimatum of improve communication and trust with Customers and Vendors or get terminated." No Caucasian employee was served with this kind of threat, including Ms. Mosca, who was also a new hire like me. I had solid communication and trust with all the vendors and customers that I had the opportunity to serve. I believe that I discriminated against because of my race and ethnicity.

In less than six months on the Job, I suffered disparate treatment, retaliation, and subjected to a hostile work environment by Manager, Shyla Muranko. Ms. Muranko , whose disparate actions were overlooked by HRM, Renee Kirk, following a repeated complaint to the Management about the unlawful conducts by Muranko.

I was subjected to a pattern of severe mistreatment comprising of 1) disparate and unfair treatment based on race and ethnicity, 2) retaliation, 3) unwarranted harassment and humiliation, 4) intentional discrimination based on race, by reducing my position  5) unwarranted and vicious surveillance of my private life including but not limited to my private email and monitoring my private email account,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Mar 15, 2021**<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2021-00173 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

6) unlawful employment practices of discharging minority employees or otherwise discriminating against them concerning their pay, compensation, terms, conditions, or privileges of employment, because of such individuals' race.

I retaliated against by Respondent for 1) Refusing to succumb to the Company threats of termination of employment, 2) Declined Company Offer of downward reduction in position and salaries, 3) unlawful discrimination based on race, 4) Punishing me for the action of another employee of color.

I believe I was discriminated against because of my race, Black/African-American and national origin, Ghana, in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, I believe that I was retaliated against.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Mar 15, 2021** _____<br>Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Exh. (C)

# FAIDA Y. ZAKARIA

3400 E. Southern Avenue #256

Phoenix AZ 85040-3847

Tel: 254-258-2570

August 30, 2020

Elizabeth Cadle, Director

Equal Employment Opportunity Commission, (EEOC)

Phoenix District Office

3300 N. Central Avenue #690

Phoenix, Arizona 85012

RE: EEOC COMPLAINT OF RACE DISCRIMINATION, HARASSMENT, AND RETALIATION
AGAINST FLACK GLOBAL METAL (FGM)

Dear Elizabeth Cadle:

I am compelled to bring this Complaint against Flack Global Metals (FGM) and its management staff
person, Shyla Muranko, for violating my U.S Civil Rights under Title VII of the Civil Rights Act of 1964
and other Federal Civil Rights statutes. I respectfully seek your assistance in investigating the unlawful
conduct and practices that include but are not limited to disparate treatment based on race & ethnic
discrimination, harassment, retaliation and failing to correct the unlawful conduct by management and staff
of FGM. FGM is a U.S based company with its head office located in Cleveland, Ohio, and a branch office
in Phoenix, Arizona. I provide herein the following  operative facts in support of this complaint.

1. That I am an educated black woman, a citizen of the United States and a daughter of a retired
   commissioned officer of the United States Armed Forces.

2. That I am a resident of Phoenix, Arizona as of early 2020, and my ethnic background is in Sub-
   Saharan Africa.

3. That prior to accepting Employment with FGM, I was employed by Echo Global Logistics Inc. in
   Dallas TX as a sales associate (Account executive) for more than two years. In March 2020, I
   accepted employment with FGM in the position of a Supply Chain Coordinator, hoping to thereby

advance my career since the position seemed to involve more advanced responsibilities than my prior position. See attachment herein marked (Appendix "A").

4. In March 2020 (during the Corona Virus Pandemic) I began my employment at FGM under the supervision of Shyla Muranko, who is based here in Phoenix, AZ.

5. That I immediately noticed that the company's workforce is predominantly Caucasian and there were no other persons of color working in the company's Arizona office, and only one female employee of color, in the entire work force of more than 25 employees, named Juanita Tyus. Ms Tyus worked at the company's main office in Cleveland, Ohio. Tyus was also supervised by Shyla Muranko.

6. That I became the second employed person of color. My assigned post was in a so-called logistics department, and the company designated Ms. Tyus to train me about the company's in-house logistics processes and procedures. The logistics department was said to be a three-person department. Two previous employees in the logistics department had been recently let go and Ms. Tyus was the only remaining employee performing the tasks of the department that had a four-employee workforce not long prior to my arrival as a new employee. Person-to-person training was especially necessary because there was an absence of adequate written documentation about relevant processes and procedures.

7. That before I had a reasonable chance to become well-informed about in-house logistics by my trainer Ms. Tyus, she was fired and I was left in the department without a trainer or anyone designated to guide me.  Before she was fired Ms. Tyus was impeded from training me effectively because she worked at a different geographical location and was straining to cope with an increased workload after the two firings mentioned above.

8. That I approached our immediate supervisor Shyla Muranko for urgent assistance with more effective training and to accommodate a high volume of demand from customers and vendors in the department. Muranko dismissed my request for training as well as the need for assistance in the handling of the high volume of service requests.

9. That as a new employee, I was challenged in learning to handle in-house logistic processes and needed effective guidance or assistance from my immediate supervisor, but she declined to provide it, and I was forced to solicit assistance from other departments within the company on how to address some of the challenges and assistance from Truck load service providers.

10. That my efforts to get assistance led me to another newly hired female employee, a Caucasian named Hillary Mosca who was experiencing essentially the same problems as me in understanding the complexity of the in-house operations, and she, Mosca, was provided with the support of a

competent trainer to assist her, but the company, through Shyla Muranko would not do the same for me.

11. That Shyla Muranko overlooked and denied my request for training assistance and then began to make a mockery of me, during the company's conference meetings, about some of my mistakes that were directly attributable to lack of training or inadequate documentation.

12. That I brought to the attention of the management at several conference meetings my difficulty getting assistance from Muranko and her hostility toward me for no good reasons. And how that was affecting my employment situation at FGM. I gave examples of her negative behavior toward me in many instances including but not limited to how she disparaged me asking her questions about anything including the company's in-house practices and logistics, yet I noticed her answering other employee's inquiries and concerns with enthusiasm and with no apparent contempt.

13. That I was comforted at one point by one sympathetic fellow employee, who was aware of my mistreatment at the hands of my supervisor Ms. Muranko, with this these encouraging words: "Those challenges are what every new employee goes through at the early stages of their employment in this company, but with proper training and management support, employees overcome these challenges and they do fantastic jobs". This employee indicated he had more than five years' experience at the company.

14. That the company management consistently overlooked my concerns and took no action in addressing my challenges on the job as a relatively new employee. That the management did protect another new employee Ms. Mosca's interest by providing to her proper training and support, overlooking some of her obvious mistakes that were either identical to my mistakes or even more significant than mine.

15. That from early in my period of employment, Shyla Muranko began fishing for my mistakes to be used against me at the conference meetings. Many good reports about me received from customers and vendors were concealed and never revealed to me or to higher management.

16. That Shyla Muranko neither showed good faith efforts to assist me to succeed on the job nor to improve my performance through training and guidance. Instead, Muranko worked to ensure that I failed at every step along the way. She constantly humiliated me at conference meetings, before other managers, resulting in my physical, emotional and mental breakdown on several occasions, forcing me to obtain medical and professional help through counseling and medication.

17. That Muranko created a hostile work place by refusing to answer my numerous legitimate questions, making a mockery of me to other managers because I asked too many questions and negatively portraying me as unintelligent and unable to articulate well because of my ethnicity. Those questions of mine were intended to prevent potential errors as I was forced to figure things out by myself without formal training and in the absence of adequate documentation for processes and procedures. Her hostilities toward me were further demonstrated by her false and negative portrayal of me to the entire workforce, Muranko used her position in the company to negatively portray me as unintelligent and unable to articulate English language well because of my ethnicity. See Attached as (Appendix "B") This appendix is a few detailed sample of  my day-to-day work activities with the company.

## Unlawful Threats of Employment Termination:

18. That Muranko made it impossible for me to approach her and began to plot to either force me to resign or otherwise get rid of me. On July 28, 2020 Muranko served me a written document captioned: "improve Communication and trust with Customers and Vendors or get terminated." No Caucasian employees were served with this kind of threat, including Ms. Mosca, who was also newly hired with the same employment status as me.

19. That I informed Muranko that the issues asserted were not part of my problem. I maintained that I had solid communication and trustworthiness with all the vendors and customers that I had the opportunity to serve. Feedback from these customers and vendors can attest to the veracity of this statement. See small sample of feedback attached here as (Appendix "C")

20. I stated and stated to Muranko that in my previous employment with Echo Global Logistics as a sales representative for more than two years, I successfully closed deals and made thousands of dollars for my employers through my communication skills, and that her false and manufactured claims of poor communication were not supported by factual evidence from customers or vendors.

21. That I pointed out some of my specific achievements -- in a situation with poor support and guidance I made great progress and had many successes that were deliberately concealed or not acknowledged by Muranko and management. I single handedly without any support saved the company hundreds and thousands of dollars in various transactions while operating under hostile conditions of employment -- e.g., I performed a 3 loads pickup from Memphis TN going to Chicago Heights IL. Another employee had a $1600 rate per load deal; I was able to book the loads for $1150 per load. I have also saved on lanes like Laredo TX to East Brewton AL, Houston to Wedowee AL, and many other lanes. I have numerous times been extended gratitude by customer service representatives for jobs well done by saving them money.

22. That my progress during the short time with the Company included going extra miles by committing additional weekday hours and time on weekends when I had to cover complicated workload situations over

the weekend. One of which was a load I booked for one Steven Swanney on July 10th, 2020. I worked with the carrier throughout the pick-up of the load to the delivery of the load on July 11th.

23. That no one in the management or staff at FGM was fair-minded enough to recognize and extend appreciation to me for progress on the job, because the person making achievements under difficult conditions happened to be a person of different race. Communication and trust are essential qualities in successfully accomplishing the above-mentioned transactions. The management claim of poor performance leveled against me is a product of disparate treatment based on my race.

24. That I am a better communicator and trustworthy to make the deals and accomplish the tasks mentioned in paragraphs 20 through 23 of this Complaint than Ms. Muranko was willing to acknowledge -- my advanced education and my experience at Echo Global Logistics attest to that.

25. I stated and restated that had my job progress and achievements been by either Masca or another Caucasian employee; they would not have been subjected to the kind of threats as well as the hostile treatment mentioned in the foregoing. This threat was designed by Ms. Muranko, supported by the company, to place undue pressure upon me to resign from employment.

**Threat of Unlawful Demotion from Supply Chain Coordinator to Administrative Assistant position.**

26. That after unsuccessful attempts to pressure me to quit my position, Muranko and FGM convened a secret meeting to introduce a new threat that would force me to accept a demotion in position and salary or face termination of employment. In this new threat, the company asserted a general level of unsatisfactory work performance and mistakes made by me. They were referring to routine minor mistakes that other employees make frequently without penalty, e.g. Ms. Hillary Mosca and many employees made more consequential mistakes than writer, yet, the Company did not subject her to the same treatment, including, but not limited to threats of demotion in position and salary.  Neither Mosca nor any other employees were subjected to this specific threat. This writer declined the offer for demotion in position and in salaries.

27. That this writer rejected FGM's offer of demotion because the offer is a product of disparate treatment based on race. FGM is attempting to use salaries, wages and compensation to economically benefit itself. That no other employees were treated with these kinds of offers.

**Unlawful Surveillance of Writer's private email system and Invasion of personal Privacy**

28. That on July 31, 2020 and August 3, 2020, FGM with ill intent to cause harm by way of my privacy right of information began to spy on my private email account that is unconnected to the Company

email. FGM instructed one of its IT employees in the name of Mathew Gould to place spy software on this writer's office Computer as well as writer's private email accounts. On July 31, 2020, Gould spent more than 1 hour on writer's work computer and more than three hours on August 3, 2020. During this time, Mr. Gould and FGM had total control of the writer's computer as well as all information and personal data transfer. Writer reported the action of Mr. Gould to her supervisor Ms. Shyla Muranko. There were no other employees who were subjected to this electronic surveillance but only the writer. The extent of the damage caused by the Company's conduct is yet unknown to writer.

## Deliberates fabrication of information about Breach of Company Confidentiality and Threat of Termination of Employment

29. That as FGM awaited the decision of this writer on the offer of demotion, FGM through its HR sent writer an email that accused writer of breach of confidentiality to wit: transferring to private email company-classified material. FGM wanted writer to delete the confidential materials from her inbox. FGM did not answer writer request as to the name of the classified material that needed to be deleted. FGM did not identify the name of the file labeled as classified material that was sent to writer's private mail account. This claim, writer states is debunked.

30. This writer stated that she could not delete anything from her inbox when she does not know the name of any such files. Writer further contends that if there is any data tampering or transfer of any information, FGM through its IT Gould may have committed the act alleged under false pretenses so that could be used against the writer as a tool for retaliation against writer for rejecting the company's offer to demote writer. This action is unlawful.

## Unlawful Harassment & intimidation Against the Writer.

31. This writer states and adopts in the foregoing averment of facts mentioned in paragraph 18 through 30 constitutes an unlawful harassment and intimidation of writer by MS. Shyla Muranko, and FGM, who knew of these violations but failed to act to protect this writer.

## Unlawful Termination of Employment and Adverse Retaliation Against the Writer.

32. This writer states and restated that the action of FGM and its Management staff in terminating writer's employment is unlawful and violates writer's Federal Civil Rights Under Title VII of the Civil Rights Act of 1964 and other Federal Civil Rights statute to wit: A) Retaliation for 1) Refusing to give in to the Company threats of Termination of Employment, 2) Declined Company Offer of downward reduction in position and salaries, 3) unlawful discrimination based on race, and other factors.

## Unlawful Custom and Discriminatory Practices Based on Race.

33. That this writer based upon personal knowledge and belief that MS. Shyla Muranko, and FGM, has in the past and present faced with an identical Complaint of Tittle V11 violations filed by former

employee(s) with EEOC and FGM never taken a corrective action in addressing the workplace discrimination or teaching fellow employees and management about how to comply with these laws.

34. At all material time FGM failed to protect this writer from Shyla Muranko's discriminatory actions.

35. That it should be noted that writer in good faith forwarded to the FGM a letter of intent to sue and request for resolution without any further intervention, but FGM rejected the Offer by failing to respond. See attached (Appendix "D")

36. That instead, FGM decided to penalize writer by attempting to withhold writer's 15% percent COVID 19 Pandemic payment agreed upon by the company and all its staffs. HR informed writer in an email message that because writer rejected the company offer, writer is not entitle to the 15% payment that was allocated to all the employees before the proposed unlawful offer. See attached Appendix marked as (Appendix "E").

**Wherefore,** the actions of Flack Global Metal (FGM) and its staff as stated in this Complaint violated the Civil Rights of this Writer.

Sincerely

Faida Y. Zakaria

Exh. (0)




Global
Network


Market
Experts


Logistics
Experts


Customized
Purchasing


Robust Processing
Capabilities

Asset-Light
Flexibility

2/28/20

**Faida Zakaria**
**3400 E. Southern Ave.**
**Phoenix, AZ 85040**

Dear **Faida**,

On behalf of Flack Global Metals ("FGM" or the "Company"), I am pleased to offer you the position of **Supply Chain Coordinator** working in our Scottsdale office, reporting to **Shyla Muranko, Director of Supply Chain**.  Your anticipated start date is **03/09/20**.

We plan to make your time at Flack Global Metals rewarding and exciting!  Your position is categorized full-time exempt, and your starting salary will be **$2,153.84 bi-weekly** (*equivalent to $56,000 annually*), less applicable taxes, deductions, and withholdings paid monthly and subjected to annual review.

Flack Global Metals is ushering in a new era of steel for companies looking to mitigate their financial risk while optimizing their supply chain.  FGM's business model is as effective as it is revolutionary-- leveraging smarter purchasing, global sourcing, and local processing & delivery to provide our customers with a unique suite of services and differentiate ourselves in the marketplace. We could not achieve this unless we had the best and brightest minds dedicated to the task. We truly believe that everything Flack Global Metals stands for, and everything it can be, starts with our employees.

**Benefits.**  A significant part of your total compensation at Flack Global Metals is derived from the benefits that FGM provides.  Flack Global Metals provides a very competitive benefits package for its eligible full-time employees.

- Eligible employees may participate in Flack Global Metals' health insurance benefits (medical, dental and vision), life insurance, short-term and long-term disability after 30 days of employment. However, per this updated agreement, you will receive benefits day 1.

- You are immediately eligible to join the 401(k) Retirement Plan; including 100% vestment from your date of hire.

The Next Generation
Service Center

**Paid Time Off**. The Company has created an Open PTO policy to provide employees flexibility in planning and scheduling time away from work. Under this Open PTO policy, vacation and sick time are not accrued and are open to the needs of each employee. This Open PTO program is based on mutual trust between the company and employee. Employees may take as much time off as they would like, within reason, as long as they fulfill their job duties. In addition, Flack Global Metals currently provides eligible employees with nine (9) paid holidays each year.

**Employee Bonus Plan.** All non-commission employees are eligible to receive a bonus payout after their first full year of employment. Bonuses are paid out less applicable taxes, deductions, and withholdings. This is a discretionary bonus tied to company performance and market/industry factors. Eligibility for participation in the bonus plan is subject to review.

**Legal information:**

**Employment-at-Will**. Please understand that this letter does not constitute a contract of employment for any given period, but will create an employment-at-will relationship that may be terminated at any time by you or Flack Global Metals, with or without cause and with or without notice. The at-will nature of the employment relationship may not be modified or amended except by written agreement signed by Flack Global Metals' CEO and you.

**Eligibility to Work in the United States.** For Flack Global Metals to comply with United States law, we ask that on your Employment Start Date you bring to Flack Global Metals appropriate documentation to verify your authorization to work in the United States. Flack Global Metals may not employ anyone who cannot provide documentation showing that they are legally authorized to work in the United States.

**Background Check.** Please understand that this offer is contingent upon the successful completion of your background check.

FLACK GLOBAL METALS

**Accepting this Offer.** We are excited to have you on our team and cannot wait to receive your acceptance. This offer is contingent upon the successful completion of our pre-employment drug-screen and background check. To accept this offer, please:

1. Sign this letter in the space provided, and then scan and email it to **Hillary Low** at hlow@flackglobalmetals.com. Consider keeping a copy for your records.

2. Return all other new hire documents. If you require further instructions or assistance, it will be provided during your first week on site.

**Faida**, we cannot wait to start working with you and hope that you will find working at Flack Global Metals one of the most rewarding experiences of your life, both professionally and personally.

Best Regards,

*Hillary Low*

**Hillary Low**
**HR Generalist**

I accept this offer of employment with Flack Global Metals and agree to the terms and conditions outlined in this letter.

DocuSigned by:

C808054CBA4E461...

**NAME**                                              2/28/2020

                                                      **Date**

cc: Shyla Muranko

The Next Generation
Service Center

Subject: Fwd: FW: Conversation Recap

**Faida Zakaria** <faida.zakaria9@gmail.com>                                                    Mon, Aug 17, 2020, 1:52 PM
to Michael Oko

You are viewing an attached message. Gmail can't verify the authenticity of attached messages.

---------- Forwarded message ----------
From: **Faida Zakaria** <faida.zakaria9@gmail.com>
Date: Mon, Aug 17, 2020 at 1:51 PM
Subject: Fwd: FW: Conversation Recap
To: Michael Oko <michaeloko840@yahoo.com>

---------- Forwarded message ----------
From: **Faida Zakaria** <fzakaria@flackglobalmetals.com>
Date: Sun, Aug 9, 2020 at 8:31 PM
Subject: FW: Conversation Recap
To: Faida Zakaria <faida.zakaria9@gmail.com>

From: Shyla Muranko <smuranko@flackglobalmetals.com>
Sent: Tuesday, July 28, 2020 8:55 AM
To: Faida Zakaria <fzakaria@flackglobalmetals.com>
Cc: Renee Kirk <rkirk@flackglobalmetals.com>
Subject: Conversation Recap

Faida,

Here is a recap of things we discussed and what you have committed to do in the future.

**Communication and trust with your customers and vendors must improve.**

Renée and I had a conversation with you to provide feedback from many of your internal customers. We discussed that CSRs, Sales Executives and myself included are not happy with your performance. The collective believes they are not being supported and they can't trust that you will execute on your duties. This lack of trust steams from your inability to follow through when you say you're going to do something, not communicating properly with CSRs and Sales Executives about load information or updates and not solving vendors issues in a reasonable timeframe.

Below are a couple recent examples:

- The Blytheville to Marietta load that was dropped by Logistics Dynamics. The carrier dropped the load and you failed to alert Monica of the situation. Since Monica wasn't aware there was a problem, she reached out to the carrier herself for an update. Monica learned through the carrier that an update had been given to you much earlier in the day and it didn't allow her to work on any other options or update her customer.
- JL Shardy emailed about a coil issue at 6am and again at 9am, you failed to address the issue twice and ignored the email until almost 4pm that day. When you finally asked about it, I told you I had already handled the problem.

In order for you to start creating trust between you and your coworkers you've committed to outlining a process for communication going forward. You will set the expectations in a written document by outlining your response time commitments and what CSRs can expect for timely and accurate updates.

You are expected to present the document to me and Brittany by Monday, August 3rd. Once Brittany and I have agreed you will present the document to the Customer Service group and request their feedback. You will have until August 7th to make any changes the CSRs requested and the new process will officially go in effect on Monday, August 10th.

**Improving your resourcefulness**

We discussed how too often you ask for information that has already been provided to you or you don't spend enough energy to find answers on your own.

Recent examples include:

- Asking for Lori's phone number when you could of found it by multiple different ways, e.g. Lori's email signature, the employee phone directory on Slack, the company website.
- Asking for a JIT's contact info when I've previously given you the contact info via email, Slack and the Carrier Contact info spreadsheet.

You've committed to creating a reference guide to set yourself up for success. As mentioned, a Slack channel will be difficult for you to reference properly so it's encouraged you come up with something more efficient. Continue to add new carrier contact info to the spreadsheet and add all of your internal customers to your cell phone. You have until Friday, July 31st to share your reference guide with me. Each week, in Friday's Logistics Meeting, we will review your guide for new entries.

**Improving your persistence and follow through.**

Persistence is key to the role of a logistics coordinator and your coworkers, including myself, are concerned you don't follow through and show enough persistence.

A recent example of your lack of persistence are the loads going from Tampa to Sarasota. Steve Swaney sent you an email providing contact information to a carrier who could cover the loads for 50% less than you quoted. You failed to follow through with the information Steve provided to you and overpaid on three shipments.

When you don't recognize you've made these mistakes with your coworkers, it creates the impression you don't care about doing better. You've committed to reaching out to Steve Swaney and telling him you recognize you've made a mistake and going forward you will make sure to follow through on it. You have until Friday, July 31st to have this conversation with Steve.

Failure to follow through or miss any of the above deadlines will result in further disciplinary action, up to and including termination.

Shyla Muranko
Director of Supply Chain

FLACK GLOBAL METALS

o: 216-658-3600 c: 440-289-1092



## Administrative Assistant

### Flack Global Metals

[Reporting to the Chief of Staff]

## ROLE

At FGM, our values are central to our culture – Transparency, Validation, Affinity for Risk, Relentless Learning, Thoughtful Disagreement, and Persistence/Resilience. To be successful in this role, you need to work enhance the efficient and smooth day-to-day operation of our organization. You must provide support to our managers and employees, assisting in daily office needs and managing our company's general administrative activities.

## RESPONSIBILITIES

### Administrative

- Answer and direct phone calls
- Organize and schedule appointments/meetings
- Plan meetings and take detailed minutes
- Write and distribute email, correspondence memos, letters, faxes and forms
- Assist in the preparation of regularly scheduled reports and presentations
- Develop and maintain a filing system
- Update and maintain office policies and procedures
- Order office supplies and research new deals and suppliers
- Maintain contact lists
- Book travel arrangements
- Submit and reconcile expense reports
- Provide general support to visitors
- Act as the point of contact for internal and external customers
- Handle requests and queries from various departments across the organization
- Contribute to team effort by accomplishing related results as needed

### Logistics

Classifying BOLs in OnBase*

- Researching BOL(s) to identify the correct PPR/shipment
- Adding "keywords" to OnBase
- Assigning correct CSR

*BOLs must be classified within two hours of receipt and all BOLs must be classified by the end of the day

Load Updates*

- Tracking which shipments are due per day
- Reaching out to carriers/vendors for specific updates
- Updating status in AX
- Relaying information to CSRs/Sales Executives
- Sending report daily

*Load update report should be complete, accurate and sent to CSRs/Sales Executives daily by 11am EST

## REQUIREMENTS

- Knowledge of office management systems and procedures
- Working knowledge of office equipment, like printers and fax machines
- Proficiency in MS Office (MS Excel and MS PowerPoint, in particular)
- Excellent time management skills and the ability to prioritize work
- Attention to detail and problem solving skills
- Excellent written and verbal communication skills

- Strong organizational skills with the ability to multi-task
- Associates degree or higher

Exh.(G)

fzakaria@flackglobalmetals.com   -   Outlook

you want to do

Move ˅     Unread/ Read     New Group        Search People       A⁾⁾       ⊞⁺        N         ⊃⁾
           Categorize ˅     Browse Groups      Address Book     Read     Get      Send to    Insights
Rules ˅    Follow Up ˅                         Filter Email ˅   Aloud   Add-ins   OneNote
Move            Tags           Groups              Find         Speech   Add-ins   OneNote

# Breach of Company Policy

↩   ↩↩   →   ···

Renee Kirk                                                                              2:49 PM
To  Faida Zakaria

Faida,

It has just been brought to our attention that you impermissibly forwarded from your FGM email account to your
personal gmail email account a number of internal materials over the past several weeks (the "Materials"), including
one or more items containing non-public personnel information as well as other confidential information relating
FGM's business. These actions constitute a very serious violation of one or more of our policies, which we consider
an extremely serious matter. It is imperative that you provide us by no later than close of business tomorrow a
sworn assurance that you have permanently deleted the Materials forwarded to your personal gmail email account
and permanently destroyed any printed copy of the Materials in your possession, custody or control. We are
presently evaluating appropriate disciplinary action, which will be influenced by your response to this email. A
breach of the Company's policies like we have seen here may result in disciplinary action up to and including
termination of employment.

**Renée Kirk**
Chief of Staff

FLACK GLOBAL METALS

o: 312.690.8008 c: 610.813.3184

16435 N. Scottsdale Rd

All folders are up to date.   Connected to Microsoft Exchange

2:52 PM
8/11/2020

**Renee Kirk** Aug 24

to me ∨

Hi, Faida. There seems to be some confusion here. Let me try to clarify things. The six weeks' severance agreement and COVID back-pay that we offered were contingent on you accepting the terms outlined in the severance letter and general release. You expressly rejected the severance option on 8/11/2020. The reduction in pay due to COVID was still in effect at the time of your separation. As such, your final pay would only include pay for hours worked through August 12th.

I hope that this helps clarify things for you. Please let me know if you have any additional questions.

Exh.(H)

me  Aug 25

to Renee ⌄

Hi Renee,

I think you should refresh your memory about my Employment Contracts and the COVID-19 back-pay agreement. Your Understanding of these two concerning my 15% payment is misplaced. Specifically, My 15% payment has nothing to do with the "Offer" you're alluding to. Whether I accepted your Offer or not, that decision has no bearing with my 15% payment, unless, you are attempting to penalize me by withholding my 15% payment for rejecting your Offer of an Administrative Assistant Position. You should also be aware that I was not an hourly employee per my employment contract as you may seem to suggest in your address of the subject matter. I had a couple of conversations with you, Shyla and Brittany back in June about getting my 15% COVID- 19 back-pay and you guys assured me that I will be getting that money back since you have laid off a few employees and was able to secure the COVID-19 relief loan from the government. I am entitled to the 15% payment that was taken from my paycheck from April 1st to July 1st. As the record show, on two occasions the Company have promised to make this payment in June and changed their mind to July and other employees were paid that 15% COVID-19 back-pay. I look forward to receiving my payment.

Best regard

● ● ●

me  Aug 26

to Renee ⌄

Hi Renee,

Exh. (I)



# BILTMORE
## PSYCHOLOGY
### SERVICES, PLLC

Ms. Faida Zakaria                                                                                          3/4/2021
3400 E. Southern Ave, 256
Phoenix, Arizona

To whom it may concern,

This letter in in response to Ms. Zakaria's recent request to provide documentation about the type, nature, and clinical impressions of the mental health services she receives from Biltmore Psychological Services.  A review of Ms. Zakaria's records revealed the following: she initially began treatment to manage occupational distress, her appetite was poor, she was having difficulties sleeping, and a lack of interest in previously pleasurable activities.  Her occupational distress stemmed mostly from feelings of being discriminated against from her employer at the time and perceived she was being treated differently than other employees.  Ms. Zakaria began weekly treatment on August 8th, 2020.  She temporarily suspended treatment after September 22, 2020 because of financial constraints due to her loss of employment.  Ms. Zakaria resumed treatment on January 4th, 2021 and is currently being seen monthly.

Clinical impressions and treatment have focused on emotional and behavioral symptoms she developed from the onset of her occupational distress.  She reported significant social, occupational impairment, and difficulty accomplishing activities of daily living.  Since the termination of her employment, Ms. Zakaria's symptoms have subsided and she reports normal functioning which is consistent with a diagnosis of Adjustment Disorder, with mixed anxiety and depressed mood.  Ms. Zakaria reported this was her first-time seeking therapy and experiencing depressive/anxious symptoms.  During the gap in treatment Ms. Zakaria stated she spent time with family and focused on healing from the discrimination she reported experiencing from her previous employer and has since gained new employment.  She emphasized that she still experiences some elevated emotive psychological distress and physiological reactivity when dealing with legal procedures she has initiated since her termination.

Ms. Zakaria's course of treatment is expected to continue as long as symptom expression remains disruptive to her daily functioning and to help her maintain the progress she has made since the onset of her symptoms.  Ongoing treatment strategies include: Emotion Focused Therapy, and Existential Therapeutic approaches.  If I can provide further assistance, please feel free to contact me.

Sincerely,

Amanda F. Emmerson, B.S.                                          Dr. Robin Potter, Psy.D.
Clinical Psychology Doctoral Student                          Clinical Psychologist