**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Faida Y. Zakara, | No. CV-21-01146-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Flack Global Metals, et al., | |
| Defendants. | |

Plaintiff Faida Zakara initiated the instant action by filing a Complaint, *pro se*, against Defendants Flack Global Metals and Shyla Muranko. (Doc. 1.) Zakara was formerly employed by Flack Global Metals. She contends that she was wrongfully terminated. Defendants have filed a Motion to Dismiss the Complaint for failure to state a claim. (Doc. 10.) Plaintiff filed a Response in Opposition to Defendants' motion. (Doc. 12.) In her Response, Plaintiff also moved for judgment on the pleadings. (Doc. 13.) For the reasons set forth below, the Court will grant Defendants' motion to dismiss and deny Plaintiff's motion for judgment on the pleadings.

I.      **BACKGROUND**

The Complaint (Doc. 1) alleges the following facts, which the Court accepts as true for purposes of resolving the pending motion. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). Plaintiff Faida Zakara was born in Ghana and is a naturalized United States citizen. (Doc. 1 ¶ 3.) Plaintiff began working for Flack Global Metals in March 2020 as a supply chain coordinator. (*Id.* ¶ 8.) In that position,

Plaintiff was responsible for communicating with customers and vendors. (*Id.* ¶¶ 25, 27.) Plaintiff worked under the direct supervision of Shyla Muranko, the manager and supervisor of Flack Global Metals' logistics department. (*Id.* ¶ 5.) Defendant Muranko was at all material times Plaintiff's immediate supervisor. (*Id.*)

Upon starting her position, Plaintiff was assigned a trainer who also worked in the logistics department. (*Id.* ¶ 10.) After Plaintiff's trainer was fired for poor job performance, Plaintiff became the only employee in the logistics department. Plaintiff struggled to understand the company's operations. (*Id.* ¶¶ 14, 16.) She communicated her challenges to another newly hired employee, who initially had similar trouble understanding the company's operations but had learned and improved through training and support from management. (*Id.* ¶ 16.) In search of similar training and support, Plaintiff "repeatedly approached" Muranko with requests for help. (*Id.* ¶ 15.) Plaintiff felt that Muranko was unresponsive and unhelpful. (*Id.*) Accordingly, Plaintiff reported to management that she had been unable to obtain assistance from Muranko and that the lack of support was affecting her morally, physically, and emotionally. (*Id.* ¶¶ 18–19.) Plaintiff also informed management that Muranko had acted with hostility toward her. (*Id.*)

Plaintiff contends that she was discriminated against on several occasions. (*Id.*) She first alleges that Muranko frequently made negative and disparaging remarks about her throughout the workplace and that she humiliated Plaintiff at meetings and in front of other managers. (*Id.* ¶¶ 17, 21.) Plaintiff also contends that Muranko made a "mockery" of her by stating that she asked too many questions, portraying her questions as unintelligent, and questioning Plaintiff's ability to speak English. (*Id.* ¶ 23.) Plaintiff asserts that Defendants' actions were based on race and that Flack Global Metals has engaged in a pattern of discriminatory practices against people of color. (*Id.* ¶ 39.)

On July 28, 2020, Plaintiff received an email from Muranko that summarized a conversation that had recently taken place between Plaintiff, Muranko, and a member of Flack Global Metals' human resources department. (*Id.* ¶ 24.) The email explained that customers were unhappy with Plaintiff's performance, particularly her failure to

communicate effectively and follow through. (Doc. 1 at 33.) It also stated that Plaintiff frequently failed to spend adequate time and energy researching answers on her own and noted that she needed to improve her persistence and follow through—attributes crucial to the role of a logistics coordinator. (*Id.*) The email provided specific steps Plaintiff should take to remedy her performance shortcomings and stated that "failure to follow through or miss any of the above deadlines will result in further disciplinary action, up to and including termination." (*Id.*)

Plaintiff's unsatisfactory work performance and mistakes continued. (Doc. 10 at 1.) Rather than terminate her, Defendants offered her a position "more in line with her skill set." (*Id.*; *see also* Doc. 1 ¶¶ 31–32) When Plaintiff refused the offer, Flack Global Metals terminated her employment. (Doc. 10 at 1.) Defendants were not made aware of Plaintiff's assertion that her treatment was discriminatory until after her termination. (*Id.*)

On August 20, 2020, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against Flack Global Metals. (Doc. 1 at 20–29.) Plaintiff urged the EEOC to investigate the unlawful conduct and practices of Flack Global Metals, including "disparate treatment based on race & ethnic discrimination, harassment, retaliation and failing to correct the unlawful conduct by management and staff." (*Id.* at 23.) On April 14, 2021, the EEOC informed Plaintiff that it had concluded its investigation and determined that additional investigation would not result in the finding of a violation. (*Id.* at 19.) The EEOC therefore dismissed Plaintiff's Charge. (*Id.*) With its dismissal, the EEOC issued a Notice of Right to Sue, pursuant to which Plaintiff, proceeding *pro se*, brought the instant Complaint. (*Id.* at 16.)

Plaintiff now seeks declaratory relief and an injunction prohibiting Defendants from engaging in further discriminatory conduct. (*Id.* at 14–15.) Plaintiff also seeks compensatory damages in the amount of $250,000 for each cause of action and punitive damages in an amount to be determined by the Court. (*Id.*)

On August 27, 2021, Defendants filed the instant Motion to Dismiss. (Doc. 10.) Defendants argue, under Federal Rule of Civil Procedure 12(b)(6), that Plaintiff has failed

to state a claim upon which relief can be granted. (*Id.* at 1.)

## II.    LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, the Court must construe all allegations of material fact in the light most favorable to the nonmoving party. *Marcus v. Holder*, 574 F.3d 1182, 1184 (9th Cir. 2009). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

A *pro se* complaint must be construed liberally, and the plaintiff must be given the "benefit of any doubt." *Abassi v. I.N.S.*, 305 F.3d 1028, 1032 (9th Cir. 2002) (citations omitted). But "even *pro se* plaintiffs must allege, with at least some degree of particularity, overt acts taken by [the] defendant which support [their] claims." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006). The Court may not supply essential elements of the claim that were not pleaded. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## III.    DISCUSSION

### A.    Motion to Dismiss

Plaintiff asserts three claims for relief, each arising under Title VII of the Civil Rights Act of 1964 ("Title VII"): (1) disparate treatment based on race; (2) retaliation; and (3) hostile work environment. (Doc. 1 ¶¶ 44–49.) The Court will address each claim in

turn.

### 1.      Disparate Treatment

Plaintiff first argues that she suffered disparate treatment on account of her race or national origin. (*Id.* ¶ 45.) Specifically, she argues that Defendants discriminatorily denied her equal training assistance and support on the job, refused to answer her job-related questions, and spread false and negative messages about her throughout the workplace. (*Id.*) Defendants argue in response that Plaintiff has not pleaded sufficient facts to establish the elements of a disparate treatment claim under Title VII. (Doc. 10 at 3–5.)

To establish disparate treatment under Title VII, a plaintiff "must offer evidence that 'gives rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)). Under *McDonnell Douglas*, disparate treatment claims are subject to a three-step burden shifting analysis. 411 U.S. 792, 802–04 (1973). First, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802. If the plaintiff does so, the defendant must then provide legitimate, nondiscriminatory reasons for the challenged action. *Id.* at 802–03. If the employer sets forth such reasons, the burden shifts back to the plaintiff to demonstrate that the reasons are pretextual. *Id.* at 804.

To state a prima facie case for discrimination under Title VII, the plaintiff must establish that: "(1) she belongs to a protected class, (2) she was qualified for her position, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

In the instant case, Defendants argue that Plaintiff is unable to satisfy the last of these elements. They contend that Plaintiff's claim fails because "she does not, and cannot, demonstrate that similarly situated individuals of a different race and/or national origin received more favorable treatment." (Doc. 10 at 4–5.) The Court agrees.

1    To establish the fourth element of a prima facie disparate treatment claim, Plaintiff

2    must show that a similarly situated employee outside her protected class was treated more

3    favorably. "It is not enough for employees to be in similar employment positions; rather,

4    the plaintiff and the comparator employee must be 'similarly situated . . . in all material

5    respects.'" *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019)

6    (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). Here, Plaintiff has failed to

7    allege facts plausibly establishing that a similarly situated employee who displayed similar

8    conduct was treated more favorably.

9    While Plaintiff points to Hillary Mosca, "another newly hired female Caucasian

10   employee," Plaintiff does not offer factual support indicating that she and Ms. Mosca were

11   similarly situated in all material respects. (Doc. 1 ¶ 16.) Although Plaintiff alleges that she

12   and Ms. Mosca experienced "identical problems in understanding the complexity of the in-

13   house operations," Plaintiff has not demonstrated that they had similar jobs or

14   responsibilities or otherwise engaged in similar conduct. (*Id.*) Rather, Plaintiff states only

15   that she and Ms. Mosca were both new hires. While relevant, such a statement is itself

16   insufficient to establish a disparate treatment claim under Title VII. *See Bastidas v. Good*

17   *Samaritan Hosp.*, 774 Fed. App'x 361, 363 (9th Cir. 2019) (noting that similarly situated

18   individuals should have "similar jobs and display similar conduct, including engaging in

19   problematic conduct of comparable seriousness").

20   The Complaint also notes that no employees other than Plaintiff were served with

21   threats to "improve [c]ommunication and trust with [c]ustomers and [v]endors or get

22   terminated." (Doc. 1 ¶ 24.) In particular, Plaintiff identifies four individuals who did not

23   receive such threats despite allegedly making frequent mistakes. (Doc 1. ¶¶ 24, 31.)

24   Plaintiff, however, does not provide any other information regarding these four individuals.

25   (*Id.*) The Complaint is devoid of facts regarding their job requirements, conduct, or other

26   information that might support a finding that Plaintiff and these employees were similarly

27   situated. Plaintiff likewise fails to allege facts indicating that these individuals received

28   better training, assistance, or job support.  Lacking such detail, the Court cannot conclude

that these individuals were similarly situated to Plaintiff for purposes of her disparate treatment claim. Accordingly, the Court cannot find that similarly situated individuals outside Plaintiff's protected class were treated more favorably, and Plaintiff therefore fails to state a claim for disparate treatment upon which relief can be granted.

**2.     Retaliation**

Plaintiff next argues that Defendants retaliated against her in violation of Title VII. (*Id.* ¶ 46.) In particular, Plaintiff maintains that Defendants violated Title VII by terminating her employment because she declined an "offer of demotion." (*Id.* ¶ 47.) Plaintiff also alleges that Defendants engaged in "deliberate and willful retaliation" by withholding her COVID-19 backpay and subjecting her to hostile treatment. (*Id.*) In response, Defendants argue that they could not have retaliated against Plaintiff in violation of Title VII because she never complained about conduct regarding her race or national origin and therefore did not engage in protected activity. (Doc. 10 at 6.)

Title VII prohibits retaliation against an employee who opposes an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a); *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 274 (2009). Retaliation claims, like disparate treatment claims, are subject to a burden-shifting framework. The plaintiff must first show a prima facie case of retaliation. To do so, the plaintiff must establish that: (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003); *Tatum v. Davita Healthcare Partners, Inc.*, 790 F. App'x 58, 60 (9th Cir. 2019). If this prima facie showing is made, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for its actions. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003). The burden then shifts back to the plaintiff to "produce evidence to show that the stated reasons were a pretext for retaliation." *Id.*

Plaintiff fails to establish a prima facie case of retaliation. While an employee's complaints to a supervisor about allegedly unlawful employment actions can constitute

protected activity, *see EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009), Plaintiff does not allege that she complained to Defendants about mistreatment based on her race or national origin. Plaintiff alleges that she complained about Muranko's hostility and the lack of training she received but does not state that she informed Defendants she believed the inadequate support to be due to her race or national origin.

Plaintiff first engaged in protected activity when she filed a Charge with the EEOC. But Plaintiff did not do so until after her termination. (Doc. 10 at 6.) Thus, because Plaintiff engaged in protected activity only *after* she was terminated, she cannot demonstrate, as she must, that the termination was caused by such activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("[A] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Plaintiff has therefore failed to establish a prima facie case of retaliation.[*]

### 3.     Hostile Work Environment

Plaintiff finally asserts that Defendants "created a hostile and insensitive workplace" for Plaintiff as a person of color. (Doc. 1 ¶ 48.) Defendants did so, Plaintiff states, through "willful disregard" of her "[c]omplaints and rights [as a] person of color." (*Id.*) As a result, Plaintiff claims she suffers and will continue to suffer "physical, mental, and emotional injury." (*Id.* ¶ 49.)

To establish a prima facie hostile work environment claim, Plaintiff must establish that: (1) she was subjected to verbal or physical conduct of a harassing nature based on her protected class, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016). To determine whether a work environment is sufficiently hostile, courts look to the totality of the

---

[*] Plaintiff also alleges that Defendants' "hostile treatment" and withholding of her COVID-19 payment were retaliatory. (Doc. 1 ¶ 47.) But, as Defendants note, these allegations fail to implicate prohibited conduct under Title VII. (Doc 10 at 6–7.)

circumstances, including the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109 (9th Cir. 2000).

Here, Plaintiff alleges that Muranko made derogatory comments about her asking too many questions, her unsatisfactory work performance, and her English language skills. (Doc. 1 ¶ 22.) Plaintiff, however, has failed to plead facts demonstrating that these comments were made in connection with her race or national origin. *See Amobi v. Arizona Bd. of Regents*, No. 2:10-CV-01561, 2011 WL 308466, at *4 (D. Ariz. Jan. 28, 2011) (dismissing plaintiff's hostile work environment claim where plaintiff alleged only that defendant made comments related to her performance, and not her race). Moreover, while the Ninth Circuit has recognized that language-based discrimination is closely analogous to national origin discrimination and should therefore be closely scrutinized, *see Rivera v. NIBCO*, 701 F. Supp. 2d 1135, 1141 (E.D. Cal. 2010), an isolated comment alone is insufficient to give rise to a hostile work environment. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). "Harassment is actionable only if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Ray*, 217 F.3d at 1245. Plaintiff fails to demonstrate that Defendants conduct was so severe or pervasive. She has therefore failed to state a claim of hostile work environment upon which relief may be granted.

### B.   Leave to Amend

Courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) ("Before dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's

deficiencies."). In this case, Plaintiff could plausibly allege additional facts sufficient to survive a motion to dismiss. *See Ziglar v. Parc Dispensary*, 859 F. App'x 774, 774 (9th Cir. 2021) (holding that dismissal of a Title VII claim without leave to amend is premature when deficiencies could potentially be cured by amendment). The Court will therefore grant Plaintiff leave to amend.

Plaintiff's amended complaint should not merely reiterate her initial Complaint. With respect to her retaliation claim, Plaintiff must show that she engaged in a protected action *prior* to termination and that her taking the protected action caused the termination. With respect to her disparate treatment claim, Plaintiff must plead facts alleging that she and the other employees identified in the Complaint were similarly situated. Finally, with respect to her hostile work environment claim, Plaintiff must demonstrate that Defendants engaged in severe or pervasive conduct that altered the conditions of her employment.

### C.    Motion for Judgement on the Pleadings

In her Response to Defendants' Motion to Dismiss (Docs. 12, 13), Plaintiff moved for judgment on the pleadings. (Docs. 12, 13.) Because the Court will grant Defendants' Motion to Dismiss, the Court will deny Plaintiff's motion as moot.

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Dismiss (Doc. 10).

**IT IS FURTHER ORDERED denying** Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) as moot.

**IT IS FURTHER ORDERED** that Plaintiff shall file an Amended Complaint, if she so chooses, no later than **14 days** after this Order is filed.

Dated this 29th day of November, 2021.

Michael T. Liburdi
United States District Judge